UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CIVIL ACTION NO. 1:19-CV-00455 (WOB-SKB)

CARRIE DAVIS,                                                                                              PLAINTIFF,

VS.                              MEMORANDUM OPINION AND ORDER

COLERAIN TOWNSHIP,                                                                               DEFENDANT.

This is a First Amendment case in which the plaintiff alleges that a police department's Facebook group censored her speech by deleting her post and that her speech was chilled by public participation rules for Township meetings.

Before the Court are cross-motions for summary judgment. (Docs. 19, 32). The Court has carefully reviewed this matter and concludes that oral argument is unnecessary. The Court now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

Carrie Davis is a resident of the Colerain Township who professes that she "regularly engages in local political discourse." (Doc. 19-1 at ¶ 2).

The Colerain Police Department established a Facebook page on December 2, 2011, to provide its community with better access to current community issues.[1] (Doc. 24-1 at 37:18-22). Three officers are administrators that manage the Facebook page: Police Chief Mark Denney, Detective Jon Middendorf, Chaplain John Love. (Doc. 24-1 at 35:14-24).

Chief Denney originally included terms and conditions under the "Our Story" section of the Facebook page. (Doc. 24-2). Some of the relevant terms state:

---

[1] The Colerain Police Department's Facebook page has over 9,000 followers. *See* Colerain Police Department (@ColerainPolice), Facebook (last visited July 19, 2021), https://www.facebook.com/ColerainPolice/.

- ***The Colerain Police Department does not allow posting of photos or videos by anyone other than members of the Colerain Police Department***.
- The Colerain Police Department welcomes a person's right to express his/her opinion and encourages posters to keep comments related to content on the page. The Colerain Police Department ***reserves the right to remove any comments/reviews*** that are ***inappropriate*** or ***offensive***, including comments that:
  o defame, abuse, harass, stalk, threaten or violate the legal rights of others,
  o include racism, hatred, slander, threats, obscenity, violence, vulgarity,
  o spam or advertise,
  o could harm the safety or well-being of one of our employees, including personal attacks,
  o are off-topic,
  o have personal information about another person or that violate a person's privacy,
  o include copyrighted material that belongs to another person,
  o contain links to inappropriate websites.

(*Id.*) (Emphasis added). These terms were unilaterally removed by Facebook in March 2021, when Facebook removed the "Our Story" section from all Facebook pages. (Doc. 26-1 at ¶¶ 10-13).

The Colerain Township Board of Trustees frequently holds meetings that are open to the public.[2] Davis attended a Township meeting on April 9, 2019, where she discussed, among other things, the importance of education. Davis said "our fire fighters and police officers they don't have bachelor's degrees but their certifications speak for themselves too, so you don't have to have a bachelor's degree in order to be wholly competent and qualified for the job." (Doc. 24-4 at 36:13-20); Waycross Community Media, *Colerain Township Trustees Meeting of April 9, 2019*, YOUTUBE (April 10, 2019), https://www.youtube.com/watch?v=2oDFhowDrEE.

On April 24, 2019, the Colerain Police Department, via Chief Denney, posted on its Facebook page that "a citizen commented that most of our officers do not have college degrees."

---

[2] The Board has adopted rules to keep its meetings orderly. On April 27, 2010, the Trustees passed Resolution No. #25-10, which provides Rules of Procedure and Decorum for Citizen Participation in Board of Trustees Meetings. (Doc. 25-12). The Board subsequently passed Resolution No. #43-16, causing Resolution No. #25-10's Rules of Public Participation to cease being in effect. (Doc. 38 at 13). On April 28, 2020, the Colerain Board of Trustees amended its rules to include the current Rules of Procedure and Conduct for public participants at Township meetings. (Doc. 29 at ¶¶ 3-4).

(Doc. 25-8). The post went on to explain that this comment was misplaced because forty-one out of fifty-six officers have college degrees. (*Id.*)

Davis alleges that she posted an excerpt of the video recording of her statement at the meeting on the Colerain Police Department's Facebook page to show that Chief Denney's post took her statement out of context, but the post was subsequently deleted.[3] (Doc. 25-4 at 16:13-23).

Davis filed her original complaint on June 14, 2019, alleging that her First Amendment rights were violated by the Rules of Public Participation and when her post was deleted from the Colerain Police Department Facebook group. (Doc. 1 at 6-7). On August 14, 2019, the defendant filed its answer. (Doc. 3). After discovery was completed, the parties filed cross-motions for summary judgment. (Docs. 19, 32).

### *Standard of Review*

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party, but the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### *Analysis*

**A.     Facebook Terms and Rules of Procedure and Conduct**

This case asks the Court to consider whether rules regulating speech at a public Township meeting and on a police department's Facebook page are unconstitutional.[4]

---

[3] The defendant disputes Davis' ability to post a video on its page because the settings only allowed the administrators of the page, not its followers, to post videos. (Doc. 21-1 at 109:3-16).

[4] The defendant argues that the plaintiff lacks standing, and her case is moot. Neither argument is persuasive. First, she alleges a concrete injury concerning her video being deleted from Facebook. She also alleged a concrete injury concerning the public participation rules because she identified two individuals that were removed for violating them. Second, her claims are not moot because its Facebook terms were unilaterally taken down by Facebook, not the police department, and Chief Denney concedes that regardless of the previous terms, the administrators can still remove or

3

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. CONST. amend. I. The applicable test varies depending on the forum where the speech occurred. *Christian Legal Soc'y Chapter of Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n. 11 (2010); *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018).

There are four types of forums the Supreme Court has recognized for First Amendment purposes: nonpublic, public, designated public, and limited public. *Hartman v. Thompson*, 931 F.3d 471, 478 (6th Cir. 2019) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 469-70 (2009)). The parties agree the Board meeting and Facebook page are limited public forums.

Limited public forums exist where the government "makes its property generally available to a certain class of speakers." *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998). The government is afforded greater freedom to restrict speech in limited public forums. *American Freedom Defense Initiative v. Suburban Mobility*, 978 F.3d 481, 491 (6th Cir. 2020). This means the government may impose content-based restrictions on what topics can be discussed at the limited public forum. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

The court must apply strict scrutiny only if the regulation is content based on the topic that is open for discussion. *See Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 229 (2d Cir. 1996). Once the government opens the debate, it may only "regulate features of speech unrelated to its content" through "time, place, or manner" restrictions. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014).

But if the speech falls outside the purview of the topic, then the Supreme Court allows the government to restrict speech if the restriction is "reasonable" and viewpoint neutral. *American Freedom Defense Initiative*, 978 F.3d at 491 (citations omitted).

---

block one of its followers if they choose. (Doc. 21-1 at 86:9-13). Her challenge to the public participation rules is no longer moot under her amended complaint.

4

### 1. Facebook rules

Davis argues that regulation of "racism", "hateful" speech, "offensive" speech, and "inappropriate" speech are regulations on viewpoints that are subject to strict scrutiny review. (Doc. 19 at 11-13). This argument is unpersuasive.

Davis concedes that, if her video post was deleted, Facebook does not tell you why it was deleted. (Doc. 25-1 at 42:19-25). Davis believes her video post was deleted because it proved that Chief Denney lied in his post. (*Id.* at 68:24-69:20). Davis also argues that nothing in the video clip contained profanity. (Doc. 25-4 at 15:5-10). A review of the clip reveals this to be true. Waycross Community Media, *Colerain Township Trustees Meeting of April 9, 2019*, YOUTUBE (April 10, 2019), https://www.youtube.com/watch?v=2oDFhowDrEE.

Chief Denney testified that if the plaintiff was able to post a video, then it was removed by one of the administrators because video posts were not permitted on the police department's Facebook page. (Doc. 21-1 at 99:15-100:23). This allegation is supported by the record.

All other critical comments Davis made about Chief Denney's post remained on the page. *See* (Docs. 25-9, 25-10). Davis concedes that she has posted on Colerain Police's Facebook group since she initiated this lawsuit, demonstrating that she has not been blocked. (Doc. 25-4 at 68:20-21). Therefore, instead of applying strict scrutiny, as Davis insists, the only question is whether the restriction was viewpoint neutral and reasonable.

### a. Viewpoint neutrality

Viewpoint discrimination occurs when speech is restricted because of the speaker's viewpoint on a topic, meaning but for the perspective of the speaker, the speech would normally be permissible. *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993).

Colerain has a legitimate, viewpoint-neutral reason for not allowing videos to be posted in the comments. Chief Denney testified that the purpose the Colerain Police Facebook Page is to "put out information to the public to be aware of." (Doc. 21-1 at 37:17-22). This includes, among other things, posting matters of public concern, asking residents to help with an ongoing investigation, and to honor the police department's employees. (*Id.* at 37:18-38:2).

To make sure conversations are limited to the issues posted, and to prevent unnecessary or confusing videos, Colerain Police Department's Facebook settings do not allow videos of any kind to be posted on its page. (*Id.*) The effect of this restriction limits the public's posts to comments and replies on posts initiated by the Colerain Police Department. But it does not limit their ability to proffer their viewpoint on the subject.

The record belies Davis' argument that her video was deleted because of her viewpoint, since her other critical comments were visible. Thus, Colerain had a viewpoint-neutral rationale.

### b. Reasonableness

The remaining question is whether not allowing videos is "reasonable in light of the purpose served." *Miller v. City of Cincinnati*, 622 F.3d 524, 535 (6th Cir. 2010). Davis does not address this issue and cites no legal authority to demonstrate the regulation is unreasonable. Thus, Davis has not carried her burden of proof. *See Hartman*, 931 F.3d at 481 (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("it is not our job to construct a legal argument")).

Regardless, the Facebook terms are reasonable. Followers are not permitted to post videos because the police department wants to limit comments to statements made by its followers. (Doc. 21-1 at 37:18-38:2). This ensures followers can quickly access the information posted without irrelevant videos detracting from the information the Colerain Police are trying to disseminate.

6

Under the terms, the administrators merely "*reserve* the right to delete or remove posts." (Doc. 19-2) (emphasis added). Chief Denney testified that "no post will be removed without legal counsel first giving [the administrators] the okay to do it." (Doc. 21-1 at 52:2-3). And while the public are not permitted to post videos in the comments, the settings allow followers to use profanity. (*Id.* at 100:5-13). Davis even testified that the Facebook group is more vulgar. (Doc. 24-4 at 39:20-40:6). This also does not inhibit the party from posting such video on their own page and directing the followers there. (Doc. 24-4 at 37:13-24). Therefore, the Facebook terms did not facially violate the First Amendment.

### 2. Board's public participation rules

Davis also argues that regulation of "disrespectful" speech is viewpoint discrimination. (Doc. 19 at 13). Davis alleges that when she criticized the conduct of certain Board members, she was interrupted and told that she must be respectful. (Doc. 35-1 at ¶ 41).

It appears that the plaintiff is arguing that regulating disrespectful speech equates to content-based regulation. That argument is misguided. *See Rosenberger*, 515 U.S. at 829-30 ("in determining whether the state is acting to preserve the limits of the forum it has created so that the exclusion of a class of speech is legitimate, we have observed a distinction between . . . content discrimination, which may be permissible if it preserves the purposes of that limited forum, and . . . viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitation."). The content of Davis' speech was not regulated because she has not alleged that she was prohibited from discussing certain things.

### a. Viewpoint neutral and reasonableness

Colerain argues regulating disrespectful speech is viewpoint neutral because speakers could use disrespectful speech while conveying ideas that the Trustees agree and disagree with,

7

and the government has an interest to assure orderly, efficient, and productive meetings. (Doc. 32 at 19-20).

Since Davis' complaint was amended, the only term at issue here is the regulation on speakers using "disrespectful" speech. The Rules of Public Participation state that "[t]he use of profane, ***disrespectful***, or threatening language or gestures will not be tolerated." (Doc. 29-1) (emphasis added). If a citizen's comment is declared disruptive by a member of the Board, then a majority of the Board may consent to law enforcement escorting the citizen from the meeting. (*Id.*)

Colerain relies on *Ison v. Madison Local School Board*, 395 F.Supp.3d 923 (S.D. Ohio 2019), to support its proposition that regulating disrespectful speech is viewpoint neutral. (Doc. 38 at 8). However, as Davis alludes to in her supplemental authority, (Doc. 42), the Sixth Circuit has remanded this matter to the district court because the school board's policy "restrictions on abusive, personally directed, and antagonistic speech" are facially unconstitutional under the First Amendment as viewpoint discrimination.

In *Ison*, the board of education permitted discussions about gun violence at a board meeting after a student fired a gun in school. 395 F.Supp.3d at 928. The board had a policy prohibiting speakers from using abusive, personally directed, or antagonistic speech. *Id*. The plaintiffs sued the school board, alleging this policy violated their First Amendment rights because the board used the policy to prevent the plaintiffs from speaking during the public portion of its meetings. *Id.*

The district court held that the plaintiff's challenge failed because the policy was content-neutral time, place, and manner regulations. *Id.* at 936. The Sixth Circuit reversed the district court on this point. *See Ison v. Madison Local Sch. Bd. of Educ.*, --- F.4th ----, 2021 WL 2820989, at *5 (6th Cir. July 7, 2021).

8

The Sixth Circuit relied on *Matal v. Tam*, 137 S.Ct. 1744 (2017) and *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019). *Id.* The Sixth Circuit held that "these cases stand for the proposition that the government may not censor speech merely because it is 'offensive to some.'" *Id.* at *3 (citing *Matal*, 137 S. Ct. at 1763 (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)). This principle, according to the Sixth Circuit, is reflected in *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518-20 (6th Cir. 2019), which held that a rule against "attacks on people or institutions" during the public comment portion of a city council meeting "could be construed as viewpoint discrimination." *Id.* The Sixth Circuit left open, however, the possibility of regulating personal attacks. *Id.* at *4, n.1.

Unlike the plaintiffs in *Ison*, Davis has not alleged that the Trustees used this policy to prevent her from speaking at the public portions of its meetings. Davis merely alleges that she was told to stop speaking disrespectfully at some undisclosed meetings.

While Davis argues that regulating "disrespectful" comments constitutes an attempt to "restrain speakers' critical or unpopular comments," this argument ignores other provisions of the Public Participation Rules that call for differing opinions. (Doc. 31-1). The rules invite citizens to present critical comments, so long as the comments are not done in a disruptive manner. (*Id.*) This means a citizen, like Davis, can be "disrespectful" no matter the message expressed. *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806 (1985).

Finally, Davis does not show how this rule is unreasonable. Indeed, the rule is reasonable to further the government's purpose of conducting an orderly, efficient, and productive meeting. As the Sixth Circuit has recognized, and reaffirmed in *Ison*, "[u]nstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard." *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 433 (6th Cir. 2009) (citations

omitted). This rationale applies with equal force to Townhall meetings. Therefore, the Rules of Public Participation do not violate Davis' First Amendment rights.

B. **Overbreadth**

"[O]verbreadth rests on principles of substantive due process, which forbid state prohibition of certain activity. The focus is not reasonable notice or ascertainable standards, but rather on whether the language . . . is so broad that it may encompass conduct protected by the Constitution." *Smith*, 402 F.Supp. at 630. Davis alleges the Facebook and Public Participation Rules broadly infringe Colerain residents' First Amendment rights. (Doc. 36 at 17).

There are two steps to analyzing an overbreadth claim. "The first step is to determine whether the regulation reaches a substantial amount of constitutionally protected speech." *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995) (internal quotations omitted). Under this step, "[a] statute is unconstitutional on its face on overbreadth grounds if there is a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court." *Id.*

The second step requires the court to determine whether the statute is "substantially overbroad and constitutionally invalid under the void for vagueness doctrine." *Id.* at 1183 (internal quotations omitted).

A plaintiff "'must demonstrate from the text of the statute and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally.'" *United States v. Cross*, 677 F.3d 278, 289 (6th Cir. 2012) (quoting *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 627 (6th Cir. 2010)). Plaintiffs may not "leverag[e] a few alleged unconstitutional applications of the statute into a ruling invalidating the law in all of its applications. *Connection Distributing Co. v. Holder*, 557 F.3d 321, 340 (6th Cir. 2009).

Davis relies on the principles outlined in *Cohen v. California*, 403 U.S. 15, 25 (1971), wherein the Supreme Court held that a protestor's First Amendment rights were violated when he was arrested for wearing a jacket in a municipal courthouse that said "Fuck the Draft."

Davis points to the terms "inappropriate", "offensive", "hateful", and/or include "racism" for the Facebook rules, and the term "disrespectful" in the new Rules of Public Participation as overbroad because the terms "lack objective standards and are subject to the decisionmaker's whims." (Doc. 19 at 16).

This Court's "first task" on a facial overbreadth challenge is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). "If it does not, then the overbreadth challenge must fail." *Id.*

Davis has not demonstrated that there is a realistic danger that either the Facebook terms or Rules of Public Participation will significantly compromise recognized First Amendment protections of individuals not before this Court.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of the parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801. Therefore, plaintiff's overbreadth challenge fails.

C. **Vagueness**

The vagueness doctrine is rooted in the idea of fairness. *Colten v. Kentucky*, 407 U.S. 104, 110 (1972). "The primary issue raised by the doctrine is whether the particular statute is

11

sufficiently definite to give fair notice to one who would avoid its sanctions, and ascertainable standards to the factfinder who just adjudicate guilt under it." *Smith*, 402 F.Supp. at 628.

Davis argues that the Facebook terms and Public Participation Rules are unconstitutionally vague "because the regulations lack objective standards and are subject to the decisionmaker's whims." (Doc. 19 at 16).

The Supreme Court has held that a regulation must give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926) ("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law").

The Sixth Circuit has held that:

> [v]agueness may take two forms, both of which result in a denial of due process. A vague ordinance denies fair notice of the standard of conduct to which a citizen is held accountable. At the same time, an ordinance is void for vagueness if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory, and overzealous enforcement.

*Leonardson v. City of East Lansing*, 896 F.2d 190, 117 (6th Cir. 1990).

Neither form for vagueness is present here. Reserving the right to delete a comment, after consulting with an attorney, that is deemed "inappropriate", "offensive", "hateful", or including "racism" does not deny fair notice of the standard of conduct. Neither did the terms invite an unrestricted delegation of power to the administrators of the Facebook page because the administrators have not deleted a comment or reply under any of this criterion.

Likewise, Davis has not shown how Board members declaring someone disruptive for being disrespectful and having them escorted out denies anyone fair notice or invites unrestricted

12

delegation of power. While Davis has identified two individuals that have been escorted away for allegedly being disruptive, this level of discretion is "unavoidable in this context." *Lowery*, 586 F.3d at 436 (citing *White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990)).

Board members should be able to keep public meeting in order. Therefore, Davis' vagueness argument fails.

## *CONCLUSIONS*

Thus, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** as follows:

A. Davis' motion for summary judgment, (Doc. 19), be, and is hereby, **DENIED**.

B. Colerain's cross-motion for summary judgment, (Doc. 32), be, and is hereby, **GRANTED**.

C. A separate judgment shall enter concurrently herewith.

This 30th day of July 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge